Good morning, all of us. My name is Jixian Li, and I'm representing the petitioner in the Fifth Court. In this case, the immigration judge entered a partial adverse-qualifications finding against the petitioner. The immigration judge did not believe that my client was physically abused in May 1978, and she did not believe that my client was arrested immediately preceding his departure from China in 1989. The major reason for the immigration judge's disbelief is that my client did not mention either incident in his first statement attached to his I-589 assignment application. It is well settled in this circuit that an applicant's testimony is not per se lacking in credibility, simply because it includes details that are not set forth in the original assignment application. These weren't really details, were they? They seem to be the two primary, maybe only, incidents of persecution against him. That's correct, Your Honor, but if we look at the circumstances when the assignment application was first prepared, it was prepared in 1993, and then since then, petitioner lost contact with the person who helped him prepare the assignment application. He, as a matter of fact, he did not even have a copy in his position when he appeared before the immigration judge 11 years later. Well, that's a little odd because some of the wording is exactly the same, a fair amount of it, actually. Isn't that true? That's correct, Your Honor. So how can it be, then? He must have had it in his possession when he did the second one because it copied the first one. That shows that he was telling the truth. Okay. Or had a very good memory. Yeah, and also that's another issue that the immigration judge did not believe that the event happened because he and his friend remembered the exact date. It is a bit, I mean, I could see where, I could see it plausible that a person who had suffered such an atrocious assault would clearly remember the date burned indelibly in his mind. Doesn't it strike you a little odd, though, that his witness also has a crystal clear recollection of the same day? Actually, they might have a discussion before my client asked his friend to write a letter. Isn't that the concern that the I.J. had? I mean, what was it? Was it the cross-examination of Sophie, the witness in the Triangle Shirtwaist case, who remembered all the details so perfectly that when she was asked on cross-examination, she was able to repeat them verbatim? And on that basis, the trial lawyer impeached her credibility because she'd rehearsed her testimony with the prosecutor. And isn't that the concern that the I.J. was talking about in this case, that the memory was just too perfect here? I think that just shows that the I.J.'s predisposition to deny my client's asylum application. The predisposition or unarticulable basis to discredit a story that's too perfectly told each time it's told to be true. For the sake of argument, assuming that the friend did not put in the exact date, and then the immigration judge would most likely say that it's hard to believe that such an important date would be left out. Let's go back to Judge Berzin's first point. I'm looking at the 1992 asylum application, question number 22, which asks, have you or any member of your family ever been and then arrested, detained, interrogated, convicted, or imprisoned? And he checks no to that box. Probably I should have qualified your statement as the person who helped him prepare the asylum application checked no. That shows the sloppy work done by the preparer of the asylum application. It could be sloppy work, but why couldn't it also be a material omission and an untrue statement by checking the no box instead of the yes box? That's what the IJ believes. Mr. Li? In the same asylum application, what is attached to the very same asylum application is the petitioner's own statement, which clearly indicated that his father was convicted of arrest. But the question is in two parts. Have you or any member of your family ever been? And then if I compare that with the same box on the 2003 asylum application, now the answer is yes, and he's now added his own arrest, which is what Judge Berzin was asking you about. And to me, that's a fairly material omission as between the first and the second application. Why is that not a piece of evidence that goes to the heart of his claim that the IJ could rely upon in concluding that he was not being credible? And also the other thing, I think that the IJ placed undue emphasis on the first statement. The reason is that for the first time when petitioner swore to the truthfulness of his asylum application, it was 2003. And by that time, the asylum application clearly includes the first one was not a sworn. He did not swear on the oath to the truthfulness of the first one. Why? One thing I was concerned about is that with regard to the 1989 arrest, which is mentioned in the application, the 2003 application, but he did not testify about it. Yeah, that's correct, Your Honor. But that does not detract from his credibility because petitioner — I'm not asking whether it detracts from the credibility. What I am asking is whether it means that the 1989 arrest is essentially not in the record for purposes of the persecution determination because it wasn't presented at the hearing. Yeah, that's correct, Your Honor. Is that correct? Yeah. So that means that all we have in the record with regard — so we can sort of forget about the 1989 arrest because he's not asking anybody to believe it now. Is that right? That's not right. I think we need to look at the record in its totality. Well, let's — I'm trying to make a — I'm trying to get some clarity here about what evidence is there of past persecution if we credit — even if we were to credit him. And my understanding is that — and I'm not sure this is so, but because he didn't testify to the 1989 arrest, although it's in his application, that that's not evidence that would be relied upon in making the past persecution determination. Is that right or not? I don't think that's right. You mean the I.J. should have relied on it in the application even though it wasn't testified to? Petitioner only answered the questions asked of him. And during his entire testimony, he was not asked a single question either on direct or on cross or by the I.J. as to the 1989 event. So the sworn statement in the application stands is your view? That's my view, Your Honor. Okay. Are you agreeing that there was no — there's no — if you had to do it out of an issue, there'd be no well-founded fear? Actually, I don't agree. That's just — this case, I think, is unique in a sense that the impact of the past persecution is still ongoing on page 406. But it appears that the case was presented to the I.J. and to the BIA only on a matter of Chen theory. Is that not right? That's correct. That's what we thought. That's all that was exhausted. There was no independent well-founded fear of future persecution. But it's presumed that if the court found that there's a past persecution, then Petitioner is entitled to a regulatory presumption of future — If that's the issue that was presented, but it appears that it wasn't. Was it? I believe it was. And then the burden — actually, the burden is on the other side, on the government side, to come up with evidence to rebut that presumption. I don't think the government had made any effort to rebut that presumption. And also, BIA did not actually address that issue in much detail. So, therefore, if the court believes that — Well, I gather the reason it didn't address this is because the I.J. said that the Respondent is not relying on any fear of future persecution, but only on the Chen theory. That's what the I.J. says. Right. But in this case, it's in the record that the persecution — I can say that the effect of the persecution is still ongoing. As I mentioned earlier, on page 4-6, Respondent states, Since I was young, my physical condition was hampered by the constant torture by the Chinese government. I was troubled by various illness. And I was always dizzy. And so he's still feeling — as of today, he's still feeling the impact of the persecution. So, therefore, I believe that, in this case, that the persecution, in a sense, is still ongoing. So, therefore, the petitioner is entitled to — Okay. Thank you very much, Mr. Li. Mr. Steinberg. Good morning, Your Honors. May it please the Court, Andrew Steinberg on behalf of the Attorney General. The Court should deny the petition for review because substantial evidence supports the Board's conclusion that Petitioner was not credible due to material discrepancies among his initial asylum application, his updated asylum application, and the testimony of the petitioner before the immigration judge. Now, the two primary discrepancies concern Petitioner's claim that, in 1978, as an eighth-grade student, he was assaulted by schoolteachers as a result of statements he made about socialism not being a fair concept to him and socialism not being a good system for society. The second discrepancy concerns the 1989 arrest and detention by the police. Both of these claims were not asserted in the initial application, and they were subsequently asserted in the updated application. But that doesn't make them inconsistent. It just makes one incomplete. Well, that's correct, Your Honor. I'd like to point out that Petitioner did sign his initial application under penalty of perjury. But he didn't say, and nothing else happened. He just said, this happened. So there's nothing untrue in that statement. Nothing untrue in which statement, Your Honor? In the first statement. Even if he believed everything in the second statement, there's nothing untrue in the first statement. And they're not literally inconsistent in any way. Well, there certainly is reason to believe that those claims did not occur because they were omitted from the initial application. Can I go back to the question Judge Berzon just asked? If he checks the box no on 22 that asks in 1998 or 99, whatever the date of that first one was, and he was, in fact, arrested, and he signs it and swears that the contents are true, doesn't that make that statement false? Does it make the answer number 22 false? False. Yes, it would. But we know that was an error because even on his own story in 1992, his father, the answer should have been yes. That's correct, Your Honor. His father was arrested. But the important thing to remember is that these two claims are the most significant claims. And as Your Honor pointed out before, it's quite odd that these are missing from the initial application. Now, this was an application that he didn't file by himself. He did have assistance in filing this claim. Now, the IJ reasoned that it's hard to believe that the petitioner would have omitted any mention of the 1978 claim when the petitioner's updated application says that that event was indelibly etched in his mind. Now, this is not simply a situation where the petitioner simply omitted certain details about past persecution. This was an entirely new claim that was being asserted. Concerning the letter that petitioner submitted from a former classmate or alleged former classmate substantiating this claim, the immigration judge was correct to question the accuracy of this letter because this was an event that took place 25 years before the letter was signed. And for some strange reason, this friend was able to state that the event took place on May 31, 1978. No, it sort of overholds the agency, though, which is always complaining about people who can't remember days to remember about the complaint about people who can remember days. I mean, my own view is that people don't remember dates, but the IJs are always making credibility determinations because people can't remember dates. Well, I think this is a different situation because this is a friend who – and this event did not happen to him. So it would seem quite odd that an event – that you would remember the specific date of an event 25 years before that happened to somebody that you knew. Is that the only reason that the IJ gave for discrediting that letter? Did the IJ say anything else? I believe that is the basis. Did this witness testify or not, or this person testify? No, that was –  From the classmate? That's correct. It appeared that the petitioner was attempting to have the classmate come into the hearing and testify, but apparently they couldn't get in touch with him. And that's actually another issue that cuts against the credibility of Petitioner here. He claimed that he ran into this classmate when Petitioner was going to the Hawaii Department of Motor Vehicles to obtain a driver's license. And he said that he ran into this friend there, and his friend was a driving instructor. Now, when Petitioner – when the immigration judge asked why this classmate could not be present at the hearing, the petitioner said that the classmate was handicapped and he was also wheelchair-bound, which seems – although it's not impossible, I assume, to be a driving instructor if you're wheelchair-bound, that that seems to be an odd explanation for why this classmate did not appear at the hearing. Turning to the – Did the IJ make a finding that that explanation was incredible? No, the IJ did not make a finding concerning that. Did the IJ ever – Mr. Tan did offer an explanation as to why he hadn't included these incidents in his original application. Did the IJ never dealt with that explanation? Did he mention it? He never responded to it? He never dealt with it? The IJ – No, I don't believe that the IJ did respond to that. Turning to the 1989 incident, in the initial application, there was a general statement that there was a renewed campaign to harass anyone who was involved in the student protests, the June 4th student movement. Now, that was just simply a general statement. There was nothing in the initial application concerning petitioner's involvement in those student movements. Now, in the updated application, it states that petitioner was arrested on suspicion of being involved in an illegal gathering. This is an entirely new claim that was not asserted at all in the initial application. Again, this 1989 incident and the 1978 incident together are the most significant – Let me ask you about our case law on this. I mean, we certainly have cases that say that – and this is really a good example of the fact that there's – because one statement says something in addition to an earlier one, doesn't mean there's a contradiction. And here – I mean, there's really not a contradiction, because he did say that people who were in this circumstance were getting harassed. He just didn't say he was one of them. So there's really just – there's an omission, but there's certainly not a contradiction. All right. Then, you know, I reacted earlier, saying, well, I don't know that that case law covers situations where we're not talking about details but central – is there any case law supporting that line of demarcation, or does our case law essentially say in general – I mean, as of now, of course, we have an on-bank case coming up, but as of now, does our case law say that you can't rely on omissions when there's no inconsistency? Your Honor, I'm not aware of that, although this is a situation where these two – these two claims go to the heart of Petitioner's asylum act. I'm asking whether our case law makes that distinction when there's no actual contradiction. I'm not aware of – I mean, I know of one case, which I wrote, which was Alvarez-Santos, where it wasn't between – it was on the stand, and he came up with something after all the testimony was in and after a break, and there were just very suspicious circumstances, and we said, well, that certainly – the fact that you came up with this thing at the very, very last minute, but this is not that. So you don't know any case laws? I'm not aware of any, Your Honor. I see my time is up. May I just wrap up? Why don't you wrap up? One issue that I would like to end with is that in the event that the Court is compelled to reject the Board's conclusion concerning the Petitioner's credibility, the matter should be remanded pursuant to the Ventura case so that the Board can have the first opportunity to evaluate the – whether Petitioner should be entitled to asylum because he would – because the Board would then have to credit the 1978 incident and the 1989 incident. Okay. Thank you very much. I have a question. Go ahead. Your opposing counsel responded to Judge Berzon that there was – I think it was Judge Berzon – that there was no testimony concerning the 1989 incident. Is that true? That's correct. Was it proper for the IJ to rely upon that as demonstrating a lack of credibility without going into that question and asking why didn't you describe what occurred in 1989 since it was in your application? Your Honor, the point that I'm making is that the 1989 incident was not mentioned at all in the initial application. Yes. It was then set forth in the updated application, and you're correct that there was no testimony concerning that. Wouldn't that have been a proper cross-examination question by a government lawyer? Would it have been improper because – Aproper. Would it be – Yeah, appropriate. Yes, Your Honor. There was none. That's correct. There was no – there was no testimony concerning the 1989 incident, whether undirected or not. Including the fact that it was left out of the earlier – Excuse me? Including the fact that it was left out of the earlier document. That's correct. There was no testimony. The only discussion was the 78 one. That's right, Your Honor. It seems a lot more plausible that it would have forgotten the 78 one than it would have forgotten the 89 one, right? I mean, the 89 one, he is essentially saying, was what precipitated him to leave. The 78 one was something that happened in his childhood when a lot of miserable, lousy things were happening in China. And at that point in time, a lot of the miserable things were happening in China. Well, that may be, Your Honor. Although the 1978 incident, in terms of the severity of it, would have been much more significant because he was allegedly struck with an electric stick and he was burned with a cigarette lighter. So the 1978 incident would more likely stick in Petitioner's mind. Okay. Thank you very much. Thank you, Your Honor. Good argument. Mr. Li, I think you have a little time left. Well, I'll give you a minute. Something's showing up in this clock, but I'll give you a minute. Go ahead. Your Honor, I just want to mention one thing, that the immigration judge also disbelieved that the 1989 event happened because Petitioner was able to travel with a valid Chinese passport. And the record reflects that the passport was obtained before his arrest. And also, the record reflects that Petitioner was not directly involved in the student movement, and he was just taken in by the police for interrogation. And then later on, when there was no evidence against him, he was released. So, therefore, it was not surprising that Petitioner was able to leave the country with a valid passport. So that reason, given, identified a bad idea to support her partial adverse credibility finding is not a permissible reason. Okay. Thank you very much, Mr. Li. The case of Chan v. Gonzalez will be submitted. The next case on the calendar is Eho Lely v. Gonzalez.
judges: Alarcon, Berzon, Tallman